### CORA M. CLARK V. THE STATE.

No. 9411.   Delivered Nov. 4, 1925.

**Swindling a Misdemeanor—Allegation and Proof—Variance Fatal.**

Where an information charged that appellant gave a check for a small sum on a bank signing her name as guardian, and the proof disclosed that she had no funds in the bank to her personal account, but did have $1600.00 to her credit as guardian, and that the check was not paid because not countersigned by her bonding company, the variance between the allegation and proof is fatal. Nor do we believe that the testimony in its entirety discloses any fraudulent intent in giving the check.

Appeal from the County Court at Law of Harris County. Tried below before the Hon. Ben F. Wilson, Judge.

Appeal from a conviction of swindling, a misdemeanor, penalty five days in the county jail.

The opinion states the case.

No brief filed for appellant.

*Sam D. Stinson*, State's Attorney, and *Nat Gentry, Jr.*, Assistant State's Attorney, for the State.

BERRY, JUDGE.—The appellant was convicted in the County Court at Law of Harris County for the offense of swindling, punishment assessed at five days in the county jail. The information charges that she gave a check on the South Texas Commercial National Bank in the sum of $1.10 in payment of two quarts of oil and five gallons of gasoline and the check was signed Cora M. Clark, Grd., and further charges that in truth and in fact the said defendant at the time of so giving and drawing said check did not have with said bank sufficient funds to pay said check, and then and there had no good reason to believe that said check would be paid by said bank when the same would be, in the ordinary course of business, presented to said bank for payment; and further charges that said check was, in due course of business, presented to said bank, and payment of the same was refused for want of said sufficient funds of said drawer.

The State introduced one of the bookkeepers from the South Texas Commercial National Bank of Houston and over the appellant's objection he was permitted to testify that Cora M. Clark individually had no money on deposit at the time the check was presented for payment. On cross examination however, this witness testified that Cora M. Clarke, Guardian, at the time the check was presented for payment had the sum of $1600 in her account in said bank. That the check was turned down by the bank because Cora M. Clark had no account as an individual and because the check did not have the counter signature of the bonding company which would have made it subject to payment on her account as guardian. He also testified that if the check had been countersigned by the bonding company it would have been paid out of the account of Cora M. Clark, Guardian. That he was not the bookkeeper that opened the account for Mrs. Cora Clark as guardian and did not know who did open this account for her. He testified that the letters Grd. are understood at the bank as the abbreviation for guardian.

This witness further testified that he did not know whether Mrs. Clark of her own knowledge knew that the checks on this account must be countersigned by the bonding company.

The party to whom the check was given testified that her name was Mrs. O. P. Posey, and that appellant came to her filling station, purchased two quarts of oil and five gallons of gasoline, asked for a check and being given one, she filled it out for $1.50 but upon being told that she only owed the sum of $1.10 she then destroyed the first check and made out the check in controversy. The witness testified that she told appellant that she did not take checks and that appellant then said "You will take this check or you will take nothing." The witness took the check and appellant drove off. That about a week or so afterwards the check was returned to her by the bank, not having been paid. That she went to see appellant about it and found her at a neighbor's house and that together they went over to appellant's house and appellant invited her in her house but she did not go in. The witness then testified as follows:

"She went into her house, and came back out with some money in her hand, and said to me "Give me the check." I said, "No you give me the money." She said, "You can give the check to the lady standing with me, and I will give her the money, and she can give it to you." I would not do that, and we had some words and then I left."

Appellant testified to buying the oil and gasoline and that she didn't know the check had been turned down until a week or ten days after she had given it and that Mrs. Posey came over to a neighbor's house and asked for her and that she told her that she was Mrs. Clark and that they went over to appellant's house together and that the witness told her that the check had been turned down and that she invited the prosecuting witness into her house but that she was mad and would not come in. That she went in the house herself and got the money to pay her with and came back to the front where Mrs. Posey was and that she told Mrs. Posey that she would give her the money if she would give her the check but that Mrs. Posey said she would not give it to her unless she would give her the money first. That appellant's daughter was standing there and appellant told Mrs. Posey to give her the check and appellant would give her the money and that she could give the money to Mrs. Posey. This Mrs. Posey refused to do and got mad and told appellant that she was going to put her in the penitentiary so appellant turned

around and walked back in the house. That she at no time refused to pay the check and when it was brought to her knowledge that same had been turned down that she immediately tried to take it up. That she had in the bank as guardian the sum of $1600 and that she never knew she had to have all the checks countersigned by the bonding company.

We think this testimony clearly shows that the allegations and the proof do not correspond. To have met the allegation in the information that the defendant at the time of giving and drawing the check did not have with said bank personally sufficient funds to pay the same it was necessary for the State to prove that the check given by her was drawn on her individual account. This was not done. On the contrary, the check set out in the information shows on its face that it was drawn on the account of Cora M. Clark, Grd. and the undisputed testimony given by the state's witnesses is to the effect that the abbreviation Grd. was understood by the bank and was recognized by it in its course of dealing with appellant to mean guardian. It is further undisputed that at the time the check was given and presented to the bank Cora M. Clark Grd. had about $1600 on deposit with the bank. The information also alleges as a reason why said check was not paid was because of insufficient funds. The undisputed proof shows that the check was for $1.10 and that there was about $1600 on deposit to appellant's credit as guardian, and that the reason the check was not paid out of appellant's account as guardian was because it was not countersigned by the bonding company who signed appellant's bond as guardian. It requires neither argument nor authority to make it manifest that if the State sought to convict appellant on the theory that she fraudulently passed the check without having it countersigned by the bonding company then it was under the duty of charging this matter by proper averments in the information and a mere charge to the effect that she gave a check as guardian and an allegation and proof that she had no funds in her personal account will not support a conviction.

We also think it clear under the undisputed testimony that the fraudulent intent was lacking in this case. We seriously question the propriety of sustaining a conviction on the proof of fraudulent intent as disclosed by this record, in view of the fact that appellant as guardian had ample funds on hand to pay the check when it was given and when it was disclosed to her that it had been turned down she immediately went into the house and got the money and offered to give it in

exchange for the check. It seems clear that the only reason that the matter was not disposed of in this manner was because she and the woman to whom the check had been given became engaged in a controversy as to how the exchange should be made and the interview broke up in harsh feelings between them.

As above stated, we seriously doubt the sufficiency of this testimony to show a fraudulent intent to deprive the prosecuting witness of the value of her property at the time the goods were received.

For the errors above discussed, it is our opinion that the judgment should be reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.